WESTERN DIST.
*October*, 1836.

WALL
*vs.*
SPURLOCK.

ses errors, and pays the judgment obtained against him, his principal will be bound to reimburse him.

=====

## WALL *vs.* SPURLOCK.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, THE JUDGE OF THE FIFTH PRESIDING.

The principle, that where the titles of the parties respectively are of equal dignity, the possessor will be maintained in accordance with the maxim *potior est conditio possidentis*, is confined to cases where both titles cover the *locus in quo*.

This is mainly an action of boundary. The plaintiff sets out by alleging that he is the owner of a tract of land situated on both sides of the bayou Robert, in the parish of Rapides, having a front of ten arpents on each side thereof, with the depth of forty each way, so as to include eight hundred superficial arpents. That his title is derived from a *requête* in favor of John Wall, and signed by Valentine Layssard, then commandant of the post of Rapides, and which was confirmed to the said John Wall by the commissioners' certificate, dated the 20th June, 1811. That this tract has been properly

WALL
vs.
SPURLOCK.

located by an authorised surveyor in 1802, and its proper location fixed agreeably to the calls of the title papers.

The plaintiff further shows, that said land is bounded on one side by lands claimed by W. H. Overton, and on the other by lands of Robert Spurlock, but that his boundary on the latter has never been definitely settled by any contradictory survey, though originally his land was properly located. That there is a confliction of boundary between them, which he has been desirous to settle amicably, but that said Spurlock declines and refuses to acknowledge his true boundary, according to his original claim.

He prays that the boundary be fixed by a decree of the court, according to the calls of his title, by parallel lines running from the bayou Robert, each way, so as to give him his quantity of eight hundred superficial arpents, in the form of a parallelogram. That the survey be made in pursuance of the provisions of the Louisiana Code, relative to fixing lines and boundaries between neighboring proprietors.

The defendant, Robert Spurlock, answered and averred, that the land he is possessed of, belongs to him and Eliza Spurlock, wife of James D. Spurlock, whom he prays may be permitted to join him in defending this suit.

The defendants then pleaded the general issue. They aver that the commissioners' certificate of confirmation, on which the plaintiff relies to support his title, was never intended for the land claimed, but for a different part of the country. That John Wall, under whom the plaintiff claims, was not entitled to any lands from the Spanish government; not having complied with the conditions, he could acquire no right to any lands from that government. His claim is, therefore, invalid, and should be rejected.

The defendants further aver, that they hold all the land claimed by them, under a good title translative of property, which was confirmed to one Jesse Ratcliffe, by the commissioners' certificate, in June, 1811; and that said Ratcliffe conveyed it to Stephen Tippet, from whom these respondents derive title; and they and those under whom they claim, have been in possession more than twenty years. They

plead the prescription of ten and twenty years, and pray to be quieted in their possession to the land in question, against the claim of the plaintiff.

Upon these pleadings and issues the parties went to trial before the court.

The plaintiff produced in evidence the *requête* of John Wall, with the commandant's order thereon, dated in 1802; and the commissioners' certificate confirming this claim to John Wall, in 1811, as claimed in the plaintiff's petition. Evidence was introduced, showing the sale of this claim at the probate sale of John Wall's succession, and purchase by the plaintiff. A plat and certificate of the Wall tract, made by the parish surveyor, was read in evidence. It states, that by "actual survey, the land claimed by the plaintiff, John L. Wall, does interfere and conflict with the land possessed by Robert Spurlock, (defendant,) one hundred and five and a half acres, equal to one hundred and twenty-four and sixty-six hundredths arpents, which interference is represented in the plat and diagram, &c."

The plat of survey showed that the land of defendants, embracing a claim of four hundred arpents, fronting on a small lake or pond, marked 'Ratcliffe's Lake,' run across the rear or end of the plaintiff's four hundred arpent tract, on that side of Bayou Robert, and cut off one hundred and five and a half acres.

The evidence of both parties showed that the claim of the plaintiff was the oldest, having been granted and located in 1802.

From the defendant's testimony it appeared that there was confirmed to Jesse Ratcliffe, four hundred superficial arpents of land, with ten arpents front on Little Lake, (Ratcliffe's Lake,) founded on a *requête* and permission to settle, dated the 14th of August, 1803. Ratcliffe conveyed to Tippet, from whom the defendants derived their title. Ratcliffe had cleared a small field, built a small cabin near the Little Lake, (called "*Ratcliffe's Lake*," on the plat,) and cultivated three or four acres of corn in 1811 and 12. His settlement and improvements were near the lake, and not included

CASES IN THE SUPREME COURT

WESTERN DIST. within the limits of Wall's location.   Wall's location had
October, 1836. been made by an authorized deputy surveyor, in 1802, by
WALL     running parallel lines on each side of the bayou, to the
vs.      distance of forty arpents in depth, so as to include his
SPURLOCK.   quantity of eight hundred superficial arpents.

Ratcliffe's location was made subsequent to its confirmation
in 1811, and instead of fronting on and running at parallel
lines, from Little, or Ratcliffe's Lake, it run off in an oblique
direction, and crossed the rear of Wall's location.   Had it run
in parallel lines, it would have run along side of Wall's, and
included Ratcliffe's improvement without any interference.

The district judge rendered judgment, giving the plaintiff
the boundary and quantity of land as claimed in the petition,
and quieting him in the possession thereof.   The defendants
appealed.

*Flint,* for the plaintiff, contended that this was an action of
bornage, or boundary, instituted under the provisions of law,
to give the plaintiff his true bondary and quantity of land,
in the form and manner called for by his titles.   *Louisiana
Code,* 841, 842, *et seq.*

2. The titles of the plaintiff call for ten arpents front on
the bayou Robert, and according to the principles of law,
must run parallel from this water course, so as to include the
superficial number of arpents to which the proprietor is enti-
tled.   There is no legal impediment to the application of the
principle invoked in this case.   7 *Martin, N. S.,* 117, 119.

*Boyce,* for the defendant.

1. In this case there is a confliction of locations.   The
plaintiff claims a part of the defendant's land, which has been
long in his possession, and those under whom he claims.
The defendant's title is indisputable, being confirmed by
commissioners' certificate, in consequence of a settlement and
cultivation under the Spanish government, to Jesse Ratcliffe.
It is superior to the plaintiff's, and accompanied by actual
and long possession ; and even if the titles were equal, he
who is in possession will prevail.   5 *Martin, N. S.,* 109.

2. The plaintiff was never in possession of the *locus in quo*. But the defendant being in long and actual possession, had he been in under a younger order or title, his possession would prevail. It must prevail here, for the plaintiff never complied with the conditions of his grant. He never occupied or cultivated the land. 5 *Martin, N. S.*, 35, 36 and 7.

. 3. The case of Boissier et al. *vs.* Metoyer, is applicable to the plaintiff's title, and he must abide the consequences. 5 *Martin,* 678. See *Land Laws,* 978, 509.

*Dunbar,* on the same side, relied on the case of Delahoussaye's heirs *vs.* Saunders. 4 *Louisiana Reports,* 443.

2. He contended that the defendant having shown possession, under a good title, could not, after the lapse of time be required to yield to the plaintiff, who was without possession of the *locus in quo,* to aid him.

*Winn,* for the plaintiff, in conclusion.

1. The defendants cannot avail themselves of the plea of prescription. 3 *Martin, N. S.,* 11. 10 *Martin,* 395.

2. The location of the Wall tract was made according to the calls of the titles, and in accordance with the principles of law, as settled by decisions of this court. He is, therefore, entitled to recover to the extent of his limits and location against the defendant. See *case of Holstein* vs. *Henderson.* 12 *Martin,* 319.

3. This suit was instituted to settle the boundaries between the plantiff and defendants, and to give the former the quantity of land his titles call for. The controlling influence of possession, applies when both parties claim the same land. The defendants had no possession within the Wall tract before instituting this suit; so that the case cited from 4 Louisiana Reports, 443, does not apply to this one.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff in this case asserts title to a tract of land, having a front of ten arpents on each side of the bayou Robert, with the ordinary depth; and he demands that a

WESTERN DIST. boundary be fixed between him and the defendant, the
October, 1836. owner of an adjoining tract.

WALL
vs.
SPURLOCK.

The defendant sets up title to the land possessed by him, under a commissioners' certificate, founded on a *requête* of Jesse Ratcliffe. He denies that the plaintiff, or those under whom he claims, are entitled to any land from the Spanish government, as he never performed the conditions of his grant, and finally he pleads prescription.

Both parties exhibit evidence of title, the plaintiff to ten arpents front on the bayou Robert, bounded below by V. Layssard, and the defendant to ten arpents front on the Little Lake. The question, therefore, which the case presents, is one of location rather than of title. It appears that the two claims have been surveyed and located in such a manner, as to conflict with each other. The location made of the plaintiff's title, conforms to the calls of the original *requête* and to the certificate of confirmation. It is laid off with a front of ten arpents on the bayou, bounded below by V. Layssard, and running forty arpents back, having the side lines parallel, and embracing a superficies of four hundred arpents. On the other hand, the location of the Ratcliffe claim is made in an irregular form, extending only twenty-eight arpents from the lake, and its side lines are not parallel with each other. It embraces, it is true, the original improvement made by Ratcliffe, but it does not appear that Ratcliffe had ever occupied any of the land covered by the plaintiff's title.

The principle, that where the titles of the parties respectively are of equal dignity, the possessor will be maintained in accordance with the maxim, *potior est conditio possidentis*, is confined to cases where both titles cover the *locus in quo*.

The question, whether Wall was entitled to a grant from the Spanish government, or whether he performed the usual conditions of grants, according to the ordinance, cannot be entertained in this case, because the defendant does not pretend to have a grant for the same land, as was the case in Boissier *vs.* Metoyer, upon which the counsel of the defendant relies. 5 *Martin,* 678.

The principle upon which this court has uniformly proceeded, that when the titles of the parties respectively, are of equal dignity, the possessors will be maintained according to the maxim, "*potior est conditio possidentis*," is

confined to cases where both titles cover the *locus in quo;* as may be seen by reference to the cases cited by the counsel for the plaintiff. The principle will not, in our opinion, avail the defendant, because it is not shown that the field which he had made previously to the survey of the land, under the order of the court, was within the limits of his grant, if located according to its calls; and because it was within the limits of the plaintiff's, as surveyed and located under the authority of the United States.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.